NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5040

JIREH CONSULTING INC. (doing business as The Writing Company),

Plaintiff,

and

JERROLL M. SANDERS,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:    February 7, 2006
_____

Before GAJARSA, DYK and PROST, Circuit Judges.

PER CURIAM.

Jerroll M. Sanders, appearing pro se, seeks review of the decision of the United States Court of Federal Claims ("Court of Claims"), Jireh Consulting, et al. v. United States, No. 04-0046C (Fed. Cl. Oct. 22, 2004), dismissing her complaint for lack of subject matter jurisdiction.  We affirm.

BACKGROUND

On March 3, 1998, Jireh Consulting (doing business as The Writing Company or "TWC") and the Internal Revenue Service ("IRS") entered into a contract for rewriting IRS taxpayer notices.  The IRS terminated the contract pursuant to a "termination for

convenience clause" on February 24, 1999. Under the termination clause, the government was required to pay TWC an amount representing costs incurred and reasonable profit. TWC submitted a proposed amount of $526,802.07. The contracting officer ("CO"), however, determined that amount was too high, and issued a final determination on May 7, 2001, in the amount of $263,784.87.

Dissatisfied with the amount, TWC appealed the CO's decision to the General Services Board of Contract Appeals ("the Board") on July 26, 2001. After twice failing to meet deadlines for filing its complaint, TWC indicated that it "prefer[red] to have [the] case adjudicated in [another] judicial forum." J.A. at 3. The Board advised TWC that it could seek dismissal, but that under the so called election doctrine, TWC might not be able to pursue its claims in another forum. TWC never formally requested dismissal, nor did it respond to the IRS' subsequent discovery requests. The Board deemed TWC's failure to respond to discovery requests to be admissions, and denied TWC any recovery, finding that the CO's settlement was "fair and complete."

Sanders, the president and sole shareholder of TWC, and TWC then filed a complaint under the Tucker Act, 28 U.S.C. § 1491, in the Court of Federal Claims, on January 16, 2004, seeking breach of contract damages and also alleging defamation and other tortious conduct. The plaintiffs alleged that various government officials sought to "terminate TWC's contract" through "sabotage, fraud, slander and libel, discrimination, tortious interference, and agency-wide abuse." J.A. at 14-15. They alleged, for example, that the government had launched fraudulent investigations relating to various contrived charges; "implied that TWC was guilty of billing improprieties"; and "insult[ed] . . . TWC's performance without justification," including by

falsifying results of IRS's inspections of TWC's work product. J.A. at 23, 25. Sanders also alleged that IRS's termination of the contract under the termination clause was "arbitrary and capricious." J.A. at 29.

The Court of Federal Claims dismissed the action for lack of subject matter jurisdiction. It held that it could not entertain TWC's claims because "TWC, a corporate plaintiff, may not appear pro se, and Plaintiff Sanders is not an attorney." J.A. at 1, 6. It also held that TWC's contract claims were barred by the election doctrine because the TWC had elected to pursue those claims before the Board. As for Sanders' claims in her individual capacity, the court held that her tort claims did not fall within the court's jurisdiction and that she had not been a party to the contract with the IRS. The court also held that Sanders, the shareholder of TWC, did not have standing to assert breach of contract claims on behalf of TWC.

Sanders then appealed to this court. She requested permission to represent TWC, but her request was denied in an April 6, 2005, order that instructed Sanders that she could not represent TWC in the appeal because she is not an attorney. The order instructed Sanders to file a replacement brief confined to her individual claims. She filed her replacement brief on October 17, 2005.

DISCUSSION

We review the Court of Claims' jurisdictional determination without deference. Applegate v. United States, 25 F.3d 1579, 1581 (Fed. Cir. 1994).

Under RCFC 83.1(c)(8), "[a] corporation may only be represented by counsel." Sanders is not an attorney. Thus we limit our review to claims that Sanders asserts in her individual capacity.

Sanders' individual claims sound in tort and contract. Insofar as her claims sound in tort, they are barred by the well-settled rule that the Court of Federal Claims does not possess jurisdiction to entertain tort claims. 28 U.S.C. § 1491(a)(1) (granting the Court of Federal Claims jurisdiction over claims "not sounding in tort"); LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995).[1]

With respect to Sanders' breach of contract claims, the contract at issue was between TWC and the IRS, not between Sanders and the IRS. Thus Sanders was not in privity of contract with the IRS. As a general rule, the "government consents to be sued only by those with whom it has privity of contract." First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279 (Fed. Cir. 1999) (quoting Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984)). In certain cases, "[a] party standing outside of privity by contractual obligation stands in the shoes of a party within privity." However, "[a] shareholder lacks any such contractual obligation." Id. Accordingly, the so called shareholder standing rule "generally prohibits shareholders from initiating actions to enforce the rights of the corporation . . . ." Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990); Algonac Mfg. Co. v. United States, 428 F.2d 1241, 1249 (Ct. Cl. 1970). The rule is no different for a sole shareholder. See, e.g., Algonac, 428 F.2d at 1249.

---

[1] Sanders cites cases holding that the Court of Federal Claims has jurisdiction over tortious breach of contract claims. See, e.g., CTA Inc. v. U.S., 44 Fed. Cl. 684 (1999). However, the court only has jurisdiction over such cases when "the substance of the claim is in contract." Id. at 698 (internal quotation marks omitted); see also, e.g., Gregory Lumber Co. v. United States, 9 Cl. Ct. 503, 518, 520, 525-26 (1986) (tortious breach of contract styled as misrepresentation in the inducement is breach of contract reviewable under Tucker Act). As discussed below, Sanders did not contract with the federal government.

Sanders appears to argue that her case falls within an exception to the rule against shareholder standing that allows "a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." Franchise Tax Bd., 493 U.S. at 331. Although Sanders claims to have suffered "directly and personally," Pet. Br. at 2, she fails to allege any "direct injuries [that are] independent of [her] status as [a] shareholder[ ]," as the exception requires. Franchise Tax Bd., 493 U.S. at 336-37. We therefore agree with the Court of Federal Claims that Sanders may not assert breach of contract claims stemming TWC's contract with the IRS.

We have reviewed Sanders' remaining claims, including her claim that the trial judge improperly failed to recuse herself, and find them to be without merit.

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.